1
2
3
4
5
6
7
8              IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BRIAN KEENE,

11             Plaintiff,               No. CIV S-07-0206 FCD GGH P

12        vs.

13   CHIEF MEDICAL OFFICER, et al.,     ORDER AND

14             Defendants.              FINDINGS & RECOMMENDATIONS

15   _____/

16   I.  Introduction

17             Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

18   42 U.S.C. § 1983.  Plaintiff alleges that he received inadequate medical care for chronic back

19   pain.  Pending before the court is defendant Pepper's summary judgment motion (court file doc.

20   69) filed November 17, 2008.  On December 8, 2008, plaintiff filed an opposition to this motion

21   (court file doc. 71).  Also pending is the summary judgment motion filed on behalf of defendants

22   Hawkins, Akintola and Hashimoto (court file doc. 76) on February 20, 2009.  On March 13,

23   2009, plaintiff filed an opposition to this motion (court file doc. 77).  Also pending is the April

24   10, 2009, motion to strike (court file doc. 81) filed on behalf of defendants Hawkins, Akintola

25   and Hashimoto.

26   /////

1

1    After carefully reviewing the record, the court grants defendants' motion to strike

2  and recommends that defendants' summary judgment motions be granted.

3  II.  Summary Judgment Standards Under Rule 56

4    Summary judgment is appropriate when it is demonstrated that there exists "no

5  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

6  matter of law."  Fed. R. Civ. P. 56(c).

7    Under summary judgment practice, the moving party

8    always bears the initial responsibility of informing the district court
      of the basis for its motion, and identifying those portions of "the
9    pleadings, depositions, answers to interrogatories, and admissions
      on file, together with the affidavits, if any," which it believes
10   demonstrate the absence of a genuine issue of material fact.

11 Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ.

12 P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

13 issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

14 depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment

15 should be entered, after adequate time for discovery and upon motion, against a party who fails to

16 make a showing sufficient to establish the existence of an element essential to that party's case,

17 and on which that party will bear the burden of proof at trial.  See id. at 322, 106 S. Ct. at 2552.

18 "[A] complete failure of proof concerning an essential element of the nonmoving party's case

19 necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment

20 should be granted, "so long as whatever is before the district court demonstrates that the standard

21 for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323, 106 S. Ct. at

22 2553.

23    If the moving party meets its initial responsibility, the burden then shifts to the

24 opposing party to establish that a genuine issue as to any material fact actually does exist.  See

25 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

26 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may

1   not rely upon the allegations or denials of its pleadings but is required to tender evidence of

2   specific facts in the form of affidavits, and/or admissible discovery material, in support of its

3   contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

4   106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

5   material, i.e., a fact that might affect the outcome of the suit under the governing law, see

6   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

7   Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

8   dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

9   nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

10          In the endeavor to establish the existence of a factual dispute, the opposing party

11   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

12   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

13   versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

14   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

15   genuine need for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

16   56(e) advisory committee's note on 1963 amendments).

17          In resolving the summary judgment motion, the court examines the pleadings,

18   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

19   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

20   477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

21   court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587, 106 S. Ct.

22   at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

23   obligation to produce a factual predicate from which the inference may be drawn.  See Richards

24   v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

25   (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than

26   simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

3

1   taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

2   'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

3            On August 6, 2007, the court advised plaintiff of the requirements for opposing a

4   motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154

5   F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir.

6   1988).

7   III.  Motion to Strike and Objections to Plaintiff's Evidence

8            On December 11, 2008, defendant Pepper filed objections (court file doc. 73) to

9   plaintiff's exhibits G, I, J, K, L, M, N and O attached to his opposition on grounds that they were

10  hearsay, lacked a proper foundation and were not properly authenticated.  On March 18, 2008,

11  defendants Hawkins, Hashimoto and Akintola filed objections (court file doc. 79) to the same

12  exhibits on the same grounds as defendant Pepper.  In their reply to plaintiff's opposition (court

13  file doc. 78), defendants Hawkins, Hashimoto and Akintola argued that plaintiff's opposition was

14  deficient because it contained no separate statement of disputed/undisputed facts as required by

15  Local Rule 56-260(b).

16           On April 3, 2009, plaintiff filed a response to defendants' objections to his

17  exhibits and defendants' argument that his opposition was deficient (court file doc. 80).

18  Attached to the response is a statement of undisputed/disputed facts.  Plaintiff states that he did

19  not know that he was required to include this statement in his opposition.  Also attached are the

20  same exhibits plaintiff submitted in support of his oppositions to defendants' motions.  Plaintiff

21  has attempted to authenticate the exhibits in his response.

22           On April 10, 2009, defendants Hawkins, Hashimoto and Akintola filed a motion

23  to strike plaintiff's April 3, 2009, response (court file doc. 81) on grounds that it is not an

24  authorized pleading.

25           Plaintiff's response to defendants' reply is unauthorized.  Accordingly, the motion

26  to strike is granted.  However, because plaintiff is a state prisoner proceeding pro se, the court

4

1   does not find that defendants' statements of undisputed facts is admitted because plaintiff failed

2   to file a separate statement of undisputed/disputed facts.  After reviewing his oppositions to

3   defendants' motions, the court is able to discern what facts plaintiff is disputing and not

4   disputing.

5           Turning to the disputed exhibits, exhibit G includes plaintiff's medical records

6   from the Los Angeles County Department of Health Services Rancho Los Amigos Medical

7   Center (1990) and the Foothill Bone and Joint Surgery Center (2001 and 2003).  These records

8   were created prior to plaintiff's incarceration but may well be in his prison medical records.

9   Exhibits I through O are documents from plaintiff's prison medical/mental health records.

10          Defendants' objections to plaintiff's use of copies of medical records for hearsay,

11  lack of authentication and/or foundation are overruled for purposes of the pending motions.  See

12  Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (evidence which could be made

13  admissible at trial maybe considered on summary judgment); see also Aholelei v. Hawaii Dept.

14  of Public Safety, 220 Fed. Appx. 670 (9th Cir. 2007).

15  IV.  Undisputed Facts

16          At all relevant times plaintiff was incarcerated at Mule Creek State Prison

17  (MCSP).  Defendant Pepper is a radiologist.  At all relevant times, defendant Akintola was a

18  physician's assistant employed at MCSP.  At all relevant times, defendant Hawkins and

19  Hashimoto were physicians and surgeons employed at MCSP.

20          On November 8, 1990, plaintiff had a diskectomy and

21  laminectomy/foraminotomy.[1]  A discectomy is the surgical removal of herniated disc material

22  that presses on a nerve root or on the spinal cord.  A laminectomy is the removal of s small piece

23  of bone (the lamina) from the affected vertebra, to allow better access to the area of disc

24  herniation.   Since that surgery, plaintiff suffered from chronic back pain.

25

26          [1]  Plaintiff has submitted medical records indicating that he had this surgery.  Based on
these records, no defendant can reasonably dispute whether plaintiff had this surgery.

1    On or around December 2005, plaintiff was first incarcerated in the California

2  Department of Corrections and Rehabilitation.

3    On or around August 2006, at MCSP Dr. Nale performed a physical examination

4  of plaintiff and ordered a lumbar spine x-ray and issued a temporary bottom bunk chrono

5  pending the results of the x-ray.  On August 8, 2006, the x-ray was performed.  Defendant Pepper

6  read the x-ray and prepared a report stating: "Frontolateral and oblique views demonstrate

7  normal mineralization.  Vertebral body heights are maintained.  Interspaces appears normal.  The

8  sacroiliac joints appear unremarkable.  Significant abnormalities are not seen."

9    On November 1, 2006, plaintiff saw defendant Akintola in the Yard A clinic.

10 Defendant Akintola assessed plaintiff as having chronic back pain and prescribed Motrin, 600

11 mg. twice a day as needed.  As plaintiff referred to his prior back surgery, defendant Akintola

12 told him to provide medical staff with the name of the outside facility where he received the

13 surgery so that the prison could request copies of the records.  Defendant Akintola also denied

14 plaintiff's request for a renewal of the temporary bottom bunk chrono based on the defendant

15 Pepper's x-ray report and the lack of plaintiff's prior surgical records.  Based on Dr. Nale's

16 August 2006 examination of plaintiff's back, the August 2006 x-ray and the lack of surgical

17 records, defendant Akintola did not see any medical justification for further diagnostic studies or

18 a physician referral at that time.

19    On November 2, 2006, plaintiff filed an administrative grievance complaining that

20 defendant Akintola had failed to give him a permanent bottom bunk chrono and only prescribed

21 Motrin.  Plaintiff also complained that defendant Akintola had refused to give him any medical

22 attention for his back.

23    On November 3, 2006, defendant Hawkins saw plaintiff on the Yard B Clinic for

24 a chronic care follow-up visit for his hypertension.  During this examination, plaintiff also

25 complained of lower back pain.  Defendant Hawkins reviewed defendant Pepper's radiology

26 report and recommended continued conservative measures such as weight loss, exercises and

1    continued use of Motrin.

2         On December 6, 2006, defendant Hashimoto interviewed and examined plaintiff

3    regarding the grievance he had filed against defendant Akintola.  Defendant Hashimoto's

4    progress notes state that plaintiff told him that he had had a laminectomy and discectomy in 1989

5    at Rancho Los Amigos.  During this examination, plaintiff complained of pain his lumbar area, in

6    his hips, knees and proximal thighs and pain in the lower thoracic spine.  Plaintiff stated that he

7    was always in pain and that he had experienced four episodes of pain with numbness in one

8    month, and that his legs were numb when he laid on his back.

9         On December 6, 2006, defendant Hashimoto observed that plaintiff was in no

10   acute distress and had a scar in the lumbar region of his back.  His straight leg raises were

11   negative and his reflexes were normal in his ankles and knees.  The motor exam found that

12   plaintiff had normal strength and gait.

13        Defendant Hashimoto diagnosed plaintiff with chronic low back pain, status post

14   laminectomy/discectomy.  He found plaintiff to be neurologically intact, and his functional level

15   was probably okay.  He determined that plaintiff needed pain management at night and that his

16   symptoms were probably stable.  Defendant Hashimoto prescribed an analgesic balm to be

17   applied twice daily to plaintiff's back as needed for pain, a 12 month lower bunk chrono and

18   standard work restrictions for 12 months, that his prior records from the Eisenhower Medical

19   Center be requested and that he be routinely monitored for his back pain by scheduling a separate

20   medical appointment for this condition.  On the physician's order form, defendant Hashimoto

21   specified that the routine appointment not be combined with plaintiff's chronic care visits related

22   to his hypertension because this would allow more time for the physician to evaluate the spine.

23        On December 6, 2001, plaintiff's medical records from the Eisenhower Medical

24   Center were ordered.

25        On December 21, 2006, defendant Hashimoto saw plaintiff on the doctor's line

26   for a follow-up visit related to his back pain, mediation and chrono.  Plaintiff complained of back

7

1   pain at night.  Defendant Hashimoto felt that plaintiff's back condition was the same as it had

2   been two weeks earlier.  He recommended that plaintiff begin aerobic exercise with a warm up

3   and to take the following medications on a trial basis: Naprosyn, Robaxin (a muscle relaxant),

4   and continued use of the analgesic balm for pain and Glucosamine Chondroitin for possible

5   degenerative disease of joints.  Plaintiff was to follow-up with another chronic care appointment

6   in February 2007.

7         On February 14, 2007, defendant Akintola saw plaintiff on the A yard clinic for a

8   chronic care follow-up visit for his hypertension.  Defendant Akintola did not treat plaintiff for

9   his back pain on this date.

10   V.   <u>Legal Standard for Eighth Amendment Claim</u>

11         In order to state a § 1983 claim for violation of the Eighth Amendment based on

12   inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

13   deliberate indifference to serious medical needs."  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106, 97 S. Ct.

14   285, 292 (1976).  To prevail, plaintiff must show both that his medical needs were objectively

15   serious, and that defendants possessed a sufficiently culpable state of mind.  <u>Wilson v. Seiter</u>,

16   501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); <u>McKinney v. Anderson</u>, 959 F.2d 853 (9th Cir.

17   1992) (on remand).  The requisite state of mind for a medical claim is "deliberate indifference."

18   <u>Hudson v. McMillian</u>, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

19         A serious medical need exists if the failure to treat a prisoner's condition could

20   result in further significant injury or the unnecessary and wanton infliction of pain.  Indications

21   that a prisoner has a serious need for medical treatment are the following:  the existence of an

22   injury that a reasonable doctor or patient would find important and worthy of comment or

23   treatment; the presence of a medical condition that significantly affects an individual's daily

24   activities; or the existence of chronic and substantial pain.  <u>See</u>, <u>e.g.</u>, <u>Wood v. Housewright</u>, 900

25   F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); <u>Hunt v. Dental Dept.</u>, 865 F.2d 198, 200-01

26   (9th Cir. 1989).  <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9th Cir. 1992), <u>overruled</u> <u>on</u> other

1    grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

2            In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court

3    defined a very strict standard which a plaintiff must meet in order to establish "deliberate

4    indifference."  Of course, negligence is insufficient.  Farmer, 511 U.S. at 835, 114 S. Ct. at 1978.

5    However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm

6    which is so obvious that it should be known) is insufficient.  Id. at 836-37, 114 S. Ct. at 1979.

7    Neither is it sufficient that a reasonable person would have known of the risk or that a defendant

8    should have known of the risk.  Id. at 842, 114 S. Ct. at 1981.

9            It is nothing less than recklessness in the criminal sense – subjective standard –

10   disregard of a risk of harm of which the actor is actually aware.  Id. at 838-842, 114 S. Ct. at

11   1979-1981.  "[T]he official must both be aware of facts from which the inference could be drawn

12   that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837,

13   114 S. Ct. at 1979.  Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk

14   of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Id. at

15   847, 114 S. Ct. at 1984.  "[I]t is enough that the official acted or failed to act despite his

16   knowledge of a substantial risk of serious harm."  Id. at 842, 114 S. Ct. at 1981.  If the risk was

17   obvious, the trier of fact may infer that a defendant knew of the risk.  Id. at 840-42, 114 S. Ct. at

18   1981.  However, obviousness per se will not impart knowledge as a matter of law.

19           Also significant to the analysis is the well established principle that mere

20   differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth

21   Amendment violation.  Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon,

22   662 F.2d 1337, 1344 (9th Cir. 1981).

23           Moreover, a physician need not fail to treat an inmate altogether in order to violate

24   that inmate's Eighth Amendment rights.  Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir.

25   1989).  A failure to competently treat a serious medical condition, even if some treatment is

26   prescribed, may constitute deliberate indifference in a particular case.  Id.

1    Additionally, mere delay in medical treatment without more is insufficient to state

2 a claim of deliberate medical indifference.  Shapley v. Nevada Bd. of State Prison Com'rs, 766

3 F.2d 404, 408 (9th Cir. 1985).  Although the delay in medical treatment must be harmful, there is

4 no requirement that the delay cause "substantial" harm.  McGuckin, 974 F.2d at 1060, citing

5 Wood v. Housewright, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and Hudson, 112 S. Ct. at 998-

6 1000.  A finding that an inmate was seriously harmed by the defendant's action or inaction tends

7 to provide additional support for a claim of deliberate indifference; however, it does not end the

8 inquiry.  McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the more serious the

9 medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those

10 needs, the more likely it is that a plaintiff has established deliberate indifference on the part of

11 the defendant."  McGuckin, 974 F.2d at 1061.

12    Superimposed on these Eighth Amendment standards is the fact that in cases

13 involving complex medical issues where plaintiff contests the type of treatment he received,

14 expert opinion will almost always be necessary to establish the necessary level of deliberate

15 indifference.  Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988).  Thus, although there

16 may be subsidiary issues of fact in dispute, unless plaintiff can provide expert evidence that the

17 treatment he received equated with deliberate indifference thereby creating a material issue of

18 fact, summary judgment should be entered for defendants.  The dispositive question on this

19 summary judgment motion is ultimately not what was the most appropriate course of treatment

20 for plaintiff, but whether the failure to timely give a certain type of treatment was, in essence,

21 criminally reckless.

22 VI.  Discussion

23    A.  Defendant Pepper

24    Plaintiff argues that defendant Pepper acted with deliberate indifference when he

25 prepared the radiology report in August 2006 because he failed to report plaintiff's prior back

26 surgery.  Plaintiff contends that this surgery should have been evident in the x-ray.  Plaintiff

1    contends that had defendant Pepper properly read his x-ray and included plaintiff's back surgery

2    in the report, then defendants would have treated his chronic back pain more seriously.

3            Defendant Pepper argues that he did not act with deliberate indifference to

4    plaintiff's serious medical needs because his radiology report was accurate.  In support of this

5    argument, defendant refers to the declaration of Dr. Fodor attached to his motion.  Dr. Fodor is a

6    radiologist as well as a member of the Radiological Society of North America and the California

7    Radiological Society.  Dr. Fodor reviewed plaintiff's August 2006 lumbar spine x-rays and it is

8    his opinion that they show a normal lumbar spine.  It is his opinion that the x-rays show no

9    evidence of a laminectomy.  Dr. Fodor states that the interspaces appear normal on the x-ray, so

10   there is no radiologic indication of disc disease at any of the lumbar spine levels.  As for

11   plaintiff's claim that he has spinal stenosis, Dr. Fodor states that it is his opinion that spinal

12   stenosis is not generally demonstrated on plain films, and it is not observable on these films.  In

13   his opinion, defendant Pepper's review and interpretation of the lumbar x-rays was correct.

14           In support of his opposition (court file doc. 71), plaintiff has provided some of his

15   medical records prepared prior to his incarceration which he contends support his claim that

16   defendant Pepper inaccurately read his x-ray.  Plaintiff has submitted a report from the Foothill

17   Bone and Joint Surgery Group dated August 14, 2001, where he appears to have been examined

18   for a worker's compensation claim regarding a back injury.  Plaintiff's Opposition, Exhibit G

19   (court file no. 71, pp. 99-102 of 178).  This report, prepared by Dr. Eric Sabety, states, "Plane

20   films [i.e. x-rays] in this office show degenerative disc disease at L5-S1 as well as at L4-L5-S1."

21   Id.  Dr. Sabety diagnosed plaintiff with post surgical spinal stenosis.  Id.

22           Plaintiff was again seen at the Foothill Bone and Joint Surgery Group on April 23,

23   2003, by Dr. Sabety.  Id. (court file no. 71, pp. 104-108).  In his report, Dr. Sabety wrote that

24   plaintiff told him that he underwent a laminectomy and disc excision at L5-S1.  Id.  After

25   reviewing plaintiff's x-rays Dr. Sabety wrote, "Plane films in this office show degenerative disc

26   disease at L5-S1 and [sic] well as at L4-S1.  There is little evidence of much of a laminectomy."

1  <u>Id</u>.  Dr. Sabety diagnosed plaintiff with post surgical spinal stenosis.  <u>Id</u>.  Spinal stenosis is

2  caused by a narrowing of the spinal cord causing nerve pinching which leads to persistent pain.

3  <u>See</u> Spinalstenosis.org.

4            Regarding treatment, Dr. Sabety wrote,

5            This patient's condition is subject to remissions and exacerbations.  For
          exacerbation, a course of physical therapy or other passive modalities is
6            reasonable in the range of 20 visits per year on an as needed basis.
          Non-steroidal anti-inflammatory medication is reasonable for attacks.
7            Aspirin, Aleve, Advil or other over the counter medication is reasonable.
          I see no indication for a back brace.
8            I see no indication for epidural steroids.
          I see no indication for narcotic analgesics.

9

10  Plaintiff's Opposition, Exhibit G (court file no. 71, pp. 104-108)                    .

11            Plaintiff has also submitted records from Dr. Donald Van Fossan, a neurologist, to

12  whom he was apparently sent by prison officials in 2008.  Plaintiff's Opposition, Exhibit I (court

13  file doc. no. 71, pp. 113-114).  After examining plaintiff, Dr. Van Fossan diagnosed him as

14  suffering from chronic back and bilateral radicular pain.  <u>Id</u>.  Dr. Van Fossan then recommended

15  that plaintiff have an MRI of his LS spine.  <u>Id</u>.

16            Plaintiff has also submitted a copy of the report by the radiologist of the MRI

17  taken on April 11, 2008:

18            FINDINGS: Normal lumbar vertebral body alignment.  Normal lumbar vertebral
          bone marrow signal.  The conus medullaris terminates at the L1 level.  The conus
19            is of normal size, shape and signal.  Moderate L5-S1 disc desiccation is present.

20            At L3-4, no significant disc bulge, central canal or lateral spinal canal stenosis.
          At L4-5, no significant bulge, central canal or lateral spinal canal stenosis.
21            At L5-S1, a small broad based disc bulge is present with a superimposed, small
          focal central disc protrusion.  No significant central or lateral spinal canal
22            stenosis.
          Moderate bilateral I4-5 and L5-S1 facet joint arthropathy.  L5-S1spondylolysis.
23            IMPRESSION: 1. There is no evidence of significant HNP.  Small L5-S1 disc
          bulge with a tiny protrusion.

24

25  <u>Id</u>. (court file doc. 71, pp. 115).

26  \\\\\

On May 1, 2008, plaintiff had a follow-up visit with Dr. Van Fossan.  Id. (court file doc. no. 71, p. 116).  In his report from this exam Dr. Van Fossan wrote, "To my inspection, there is some mild bulging as well as degeneration of the L5-S1 disc but no evidence of root impingement at any level.  Disc space heights are all well maintained."  Id.  Dr. Fossan concluded,

> IMPRESSION: Chronic back, hip and thigh pain.  On review of the MRI films, I do not find any obvious source for nerve root impingement.  Presumably, his pain is on a musculoskeletal basis.
>
> RECOMMENDATIONS: Consider x-ray of the hips and pelvis to complete the work-up.  Treatment is mostly symptomatic, including physical therapy, muscle relaxers, and nonsteroidal agents.  Follow-up here p.r. n.

Id.

Plaintiff has also attached a copy of the Physical Medicine and Rehabilitation Report prepared by Dr. Henry on September 19, 2008.  Plaintiff's Opposition, Exhibit J (court file do. 71, pp. 118-119).  Dr. Henry summarizes Dr. Van Fossan's reading of the MRI report and provides his own assessment and recommendations:

> ASSESSMENT:
>
> 1. Internal disk disarrangement 722.2 at L4-5, L5-S1.
> 2. Spondylolysis 721.3.
> 3. Post-laminectomy syndrome 722.83.
>
> RECOMMENDATIONS:
>
> 1. CT myelegram lumbosacral spine at L5-S1.
> 2. Electrodiagnostic studies lower extremities.
> 3. Transforaminal epidural steroid injections bilateral L5-S1 following the above studies. He will continue with his current pain medication regimen.  I see no need to change at this time.  He has not reached maximal medical improvement.  The patient is reticent to undergo any spinal fusions and would like to try all conservative measure first.  I have instructed him that he needs to lose weight, at least 50 pounds and he should be evaluated and educated by the physical therapist 1 to 2 times a week for the next 6 to 8 weeks.

Id.

For the following reasons, the court finds that defendant Pepper did not act with deliberate indifference when he prepared the x-ray report.  In the first place, plaintiff has

1   presented no expert evidence contradicting the expert opinion of Dr. Fodor that defendant

2   Pepper's interpretation of his x-ray was accurate.  While plaintiff strongly argues that his x-ray

3   must have shown evidence of his surgery, Dr. Sabety's report of his 2003 x-ray states that there

4   was "little evidence" of the laminectomy.

5          The main difference between Dr. Sabety's report of plaintiff's 2003 x-ray and

6   defendant Pepper's report of plaintiff's 2006 x-ray is that Dr. Sabety mentioned degenerative disc

7   disease and spinal stenosis.  Regarding stenosis, defendant Pepper has presented the expert

8   opinion of Dr. Fodor that spinal stenosis is not generally demonstrated on plain films, and it is

9   not observable on these films.  Plaintiff has presented no expert evidence that his spinal stenosis

10  was visible on the 2006 x-ray.  In addition, plaintiff's 2008 MRI found no evidence of stenosis.

11         As for defendant Pepper's failure to mention disc degeneration, disc degeneration

12  is a very common ailment.  In finding that plaintiff's x-ray showed no significant abnormalities,

13  it is reasonable to infer that defendant Pepper found that plaintiff's disc degeneration was not

14  significant.  Plaintiff has presented no expert evidence demonstrating that in 2006 his disc

15  degeneration disease constituted a significant abnormality.

16         Because plaintiff has submitted no expert evidence contradicting defendant's

17  expert evidence that he properly read his x-ray and, in fact, has submitted evidence in support of

18  defendant's position, defendant Pepper should be granted summary judgment.

19                     B.  Defendant Hashimoto

20         Plaintiff alleges that defendant Hashimoto failed to adequately treat his severe,

21  chronic back pain.

22         Defendant Hashimoto argues that he did not act with deliberate indifference to

23  plaintiff's serious medical needs on the two occasions he treated him.  As discussed above, on

24  December 6, 2006, defendant Hashimoto ordered a 12 month lower bunk chrono, a 12 month

25  work restriction, requested his medical records from the Eisenhower Medical Center, prescribed

26  an analgesic balm and ordered that plaintiff receive chronic care visits for his back pain.  On

December 21, 2006, defendant Hashimoto saw plaintiff again for back pain.  On that date, defendant recommended that plaintiff exercise and prescribed naproxyn, robaxin and glucosamine.

In his opposition, plaintiff contends that he never received the glucosamine prescribed by defendant Hashimoto.  Plaintiff also argues that defendant should have prescribed stronger pain medication and ordered further treatment and testing.  In support of these arguments, plaintiff refers to the medical records attached to his opposition demonstrating that in 2008 he was sent to Dr. Van Fossan who, after reviewing his MRI, recommended that plaintiff receive physical therapy, muscle relaxants and nonsteroidal agents for his pain.  Plaintiff's Opposition, Exhibit I (court file doc. 77-2, pp. 115-118).  Also attached to plaintiff's opposition is a copy of the physical medicine and rehabilitation report prepared by Dr. Henry on September 19, 2008.  Plaintiff's Opposition, Exhibit J (court file doc. 77-2, pp. 120-121).  As discussed above, Dr. Henry recommended steroid injections and physical therapy.  Plaintiff has also submitted medical records from November 16, 2006, from an initial psychiatric evaluation stating that he had trouble sleeping due to back pain.  Plaintiff's Opposition, Exhibit N, p. 146.  A record from March 28, 2007, indicates that sleeping medication was improving his sleep and mood.  Id., p. 154.  Plaintiff has also submitted several Health Care Services Forms he filled out in 2007 requesting treatment for his chronic back pain.  See Plaintiff's Opposition, Exhibit O.

After reviewing the record, the court does not find that defendant Hashimoto acted with deliberate indifference to plaintiff's serious medical needs.  Defendant Hashimoto prescribed conservative treatment for plaintiff on December 6, 2006, and December 21, 2006.  In his declaration, defendant Hashimoto states that in his opinion, referral to a specialist or for further diagnostics was not appropriate because the conservative treatment he prescribed had not been given time to work.  Defendants' Summary Judgment Motion, Hashimoto declaration, ¶ 13.

Neither party has addressed and the court is curious as to the treatment plaintiff received for back pain following his incarceration in the California Department of Corrections

and Rehabilitation beginning in December 2005.  In other words, what treatment for back pain did plaintiff receive during the year prior to December 2006?  Nevertheless, plaintiff has presented no expert evidence contradicting defendants' evidence that the conservative treatment prescribed by defendant Hashimoto in December 2006 was appropriate.  As discussed above, defendant has presented evidence that referral to a specialist for further testing was not yet warranted because sufficient time had not yet passed in order to determine whether the conservative treatment was effective.

Regarding plaintiff's failure to receive the glucosamine he prescribed, defendant Hashimoto states in his declaration that because this drug is a non-formulary medication, he had to make a special request for it to the Chief Physician for approval.  Defendants' Summary Judgment Motion, Hashimoto Declaration,¶ 12.  After the Chief Physician signs it, he sends it to the pharmacy to be filled.  Id.  In his declaration, defendant Hashimoto states that he is not involved in the distribution of non-formulary medication.  Id., ¶ 13.

The record does not demonstrate that defendant Hashimoto acted with deliberate indifference by failing to ensure that plaintiff received the glucosamine (an over-the-counter supplement available in food and drug stores).  Defendant has presented evidence demonstrating that because it was a non-formulary medication, he was not involved in its distribution.  In addition, it does not appear that the glucosamine would necessarily have relieved plaintiff's pain, which is the gravamen of this action.

For the reasons discussed above, the court recommends that defendant Hashimoto be granted summary judgment because there is no evidence that he acted with deliberate indifference to plaintiff's serious medical needs.

C.  Defendant Hawkins

Plaintiff argues that defendant Hawkins should have prescribed stronger pain medication and ordered further testing when he saw plaintiff on November 3, 2006.  Defendants argue that defendant Hawkins did not act with deliberate indifference on the one occasion he

1    examined plaintiff.

2            As discussed above, on November 3, 2006, after reviewing defendant Pepper's

3    radiology report, defendant Hawkins recommended continued conservative measures for

4    plaintiff's back pain including weight loss, exercises and use of Motrin.  Again, while the court is

5    curious as to the treatment for back pain plaintiff had received following his incarceration in the

6    California Department of Corrections in December 2005, because defendant Pepper's report

7    showed no significant abnormalities in plaintiff's x-ray, the court does not find that defendant

8    Hawkins acted with deliberate indifference by ordering the continuation of conservative

9    measures.  Plaintiff has presented no expert evidence that defendant Hawkins' treatment of him

10   on November 3, 2006, was improper.

11           Accordingly, defendant Hawkins should be granted summary judgment because

12   he did not act with deliberate indifference to plaintiff's serious medical needs on November 3,

13   2006.

14           D.  Akintola

15           Plaintiff argues that defendant Akintola acted with deliberate indifference on

16   November 1, 2006, by failing to renew his temporary bottom bunk chrono and for failing to order

17   further testing and treatment of his back.  Plaintiff also argues that defendant Akintola acted with

18   deliberate indifference by failing to treat his back pain on February 14, 2007.

19           Defendant Akintola argues that he is entitled to summary judgment because he did

20   not act with deliberate indifference to plaintiff's serious medical needs.  In his declaration

21   submitted in support of the summary judgment motion, defendant Akintola states that he did not

22   renew the lower bunk chrono on November 1, 2006, because plaintiff's x-ray, as read by

23   defendant Pepper, stated that his lumbar spine was normal.  Akintola declaration, ¶ 8.  For the

24   same reason, defendant Akintola did not see any medication justification for further diagnostic

25   studies or a referral at that time.

26   \\\\\

                                        17

1          On December 6, 2006, in response to his grievance against defendant Akintola,

2   defendant Hashimoto renewed plaintiff's lower bunk chrono, prescribed the analgestic balm and

3   ordered chronic care visits related to his spine.  Were the court to find that defendant Akintola

4   should have ordered the lower bunk chrono on November 1, 2006, plaintiff would have to

5   demonstrate that he suffered some injury as a result of the approximate one month delay in

6   receiving the chrono.  See McGuckin, 974 F.2d at 1060.  This he has not done.  In addition, the

7   court above found that defendants Hawkins and Hashimoto did not act with deliberate

8   indifference by ordering conservative treatment rather than recommending that plaintiff be sent

9   to a specialist or receive further diagnostic testing.  For the same reasons, the court finds that

10  defendant Akintola did not act with deliberate indifference on November 1, 2006, when he failed

11  to recommend this treatment.

12          In his declaration, defendant Akintola states that he saw plaintiff on February 14,

13  2007, for a chronic follow-up visit for his hypertension.  Defendants' Summary Judgment

14  Motion, Akintola declaration, ¶ 10.  As discussed above, in December 2006 defendant

15  Hashimoto ordered that plaintiff receive separate chronic care visits for his back rather than

16  combining them with the chronic care visits he received for hypertension.  Therefore, because the

17  purpose of the February 14, 2007, visit was to deal with plaintiff's hypertension, the court does

18  not find that defendant Akintola acted with deliberate indifference by failing to treat plaintiff's

19  back pain.

20          Defendant Akintola should be granted summary judgment for the reasons

21  discussed above.

22          Accordingly, IT IS HEREBY ORDERED that defendants' April 10, 2009, motion

23  to strike (no. 81) is granted;

24          IT IS HEREBY RECOMMENDED that defendants' summary judgment motions

25  (nos. 69 and 76) be granted.

26  \\\\\

18

1          These findings and recommendations are submitted to the United States District

2    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

3    days after being served with these findings and recommendations, plaintiff may file written

4    objections with the court.  The document should be captioned "Objections to Magistrate Judge's

5    Findings and Recommendations."  Plaintiff is advised that failure to file objections within the

6    specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951

7    F.2d 1153 (9th Cir. 1991).

8    DATED:  06/01/09                                    /s/ Gregory G. Hollows

9                                              UNITED STATES MAGISTRATE JUDGE

10

11   keene206.sj

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26